## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| CLARA LeBEAU,<br>as Administrator of the Estate of<br>Andrea Circle Bear, a/k/a<br>"Andrea High Bear," deceased,<br><br>          Plaintiff,<br><br>          v.<br><br>UNITED STATES OF AMERICA,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No.: ___23-cv-4038___<br><br><br>**COMPLAINT** |

Plaintiff Clara LeBeau, in her capacity as Administrator of the Estate of Andrea Circle Bear, a/k/a "Andrea High Bear," deceased, by her attorneys, complains against Defendant United States of America as follows[1]:

### NATURE OF THIS ACTION

1.      This is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, to hold the United States responsible for the tragic and avoidable death of Andrea Circle Bear at age 30 while in federal custody.

2.      In March 2020, Ms. Circle Bear was in her eighth month of a high-risk pregnancy and serving a 26-month sentence for a nonviolent offense.  To that point, Ms. Circle Bear had been housed in local jail facilities in South Dakota, where she had access to necessary prenatal care and where she was scheduled to give birth by Caesarian section at a hospital familiar with her medical history.

---

[1]  The factual allegations in this Complaint are based on Plaintiff's personal knowledge, public reports of the relevant incidents, interviews of percipient and expert witnesses, pertinent medical records, and documents disclosed by the relevant federal agencies both publicly and in response to requests under the Freedom of Information Act.

3.      As the COVID-19 pandemic began to rage that month, the Federal Bureau of Prisons ("BOP") issued strict directives to limit prisoner movement.  In violation of the BOP's directive, on March 20, 2020, federal officials decided to transfer Ms. Circle Bear out of South Dakota to a crowded federal prison in Texas, about 800 miles away.  They did so by placing Ms. Circle Bear on a small airplane, packed with three other inmates and four employees of the United States Marshals Service ("USMS"), taking no COVID-19 precautions whatsoever.  That decision and action were contrary to official policy and good sense, and would ultimately lead to Ms. Circle Bear's death.  As more fully described below, Ms. Circle Bear contracted COVID-19 and was forced to deliver her baby girl by emergency Caesarian section while intubated and connected to a ventilator.  She died weeks later without ever having had the opportunity to hold her newborn child.

4.      The unjustifiable decision by the USMS and the BOP to transfer Ms. Circle Bear from South Dakota into the teeth of the pandemic was just the first step in a course of reckless misconduct by federal agencies who, instead of carrying out their duty to protect Ms. Circle Bear, needlessly endangered her and caused her death.

5.      As would become well documented, the Texas prison to which Ms. Circle Bear was transferred had not implemented even the most basic recommendations from the Centers for Disease Control and Prevention ("CDC") as to best practices for COVID-19 mitigation in detention facilities.  The BOP "quarantined" Ms. Circle Bear in a small cell with three other inmates, and it made no effort to disinfect the cell or to provide Ms. Circle Bear and her cellmates with sanitary products or appropriate personal protective equipment.  Predictably, Ms. Circle Bear quickly contracted COVID-19 after her transfer and detention in Texas.

2

6.      After Ms. Circle Bear became symptomatic, BOP medical staff failed to apprehend that she was seriously ill—or to consider the ramifications of that illness given that she was in the third trimester of a high-risk pregnancy and had other preexisting conditions. Instead, BOP doctors and nurses repeatedly both shrugged off Ms. Circle Bear's symptoms and failed to check on the health of her fetus.  Ms. Circle Bear waited days before first seeing a doctor, and even after orders were issued that she be closely monitored and hospitalized if her symptoms worsened, days more went by before anyone paid heed to her deteriorating health.  By that time, it was too late.  Ms. Circle Bear was hospitalized, immediately intubated, and placed on a ventilator, and her baby was soon thereafter delivered via emergency Caesarian section. Ms. Circle Bear never awoke; she died about four weeks later.  Records further show that about two weeks before Ms. Circle Bear's death—while she was intubated and in an induced coma— BOP medical staff altered her medical records to downplay the seriousness of her symptoms in the period before she was hospitalized.

7.      Ms. Circle Bear's death received widespread media attention, not just in South Dakota but nationwide and even worldwide.  That attention was overwhelmingly negative and critical of Ms. Circle Bear's treatment at the hands of the USMS and the BOP.  For instance, a national criminal-justice commentator was quoted in the *New York Times* characterizing Ms. Circle Bear's death as "a national disgrace."[2]

8.      The FTCA was enacted to give individuals like Ms. Circle Bear a remedy for the harm that the Government and its agents have inflicted upon them through their negligent conduct.  It has long been understood to afford a remedy for federal prisoners who are

---

[2] Nicholas Bogel-Burroughs & Vanessa Swales, *Prisoner with Coronavirus Dies After Giving Birth While on Ventilator*, N.Y. Times (updated June 16, 2020), https://www.nytimes.com/2020/04/29/us/coronavirus-inmate-death-andrea-circle-bear.html (quoting Kevin Ring, President, Fams. Against Mandatory Minimums).

3

negligently injured by their jailers.  As the U.S. Supreme Court has explained, the FTCA—for prisoners like all citizens—"provides much-needed relief to those suffering injury from the negligence of government employees."  *United States v. Muniz*, 374 U.S. 150, 165 (1963).  Because the Government's negligence led to Ms. Circle Bear's death, relief here is sought by Plaintiff Clara LeBeau, Ms. Circle Bear's grandmother and the administrator of her estate, for the benefit of Ms. Circle Bear's motherless children.

## PARTIES

9.      Plaintiff is Clara LeBeau, who brings this action in her capacity as administrator of the estate of Andrea Circle Bear, a/k/a "Andrea High Bear."

10.      Ms. Circle Bear was a member of the Cheyenne River Sioux Tribe and, prior to her incarceration, was a resident of Eagle Butte, South Dakota.  Ms. Circle Bear died at age 30 on April 28, 2020, while in federal custody.

11.      Ms. LeBeau is Ms. Circle Bear's grandmother.  Ms. LeBeau is a member of the Cheyenne River Sioux Tribe and a resident of Eagle Butte, South Dakota.

12.      The Cheyenne River Sioux Tribal Court appointed Ms. LeBeau as administrator of Ms. Circle Bear's estate on July 1, 2020.[3]

13.      The sole Defendant is the United States of America, which acted for all purposes relevant here through the USMS and the BOP.

14.      The USMS is a duly established agency of the United States responsible for housing, transporting, and caring for prisoners in federal custody until they are transferred to custody of the BOP.

---

[3]  The order of the Cheyenne River Sioux Tribal Court is attached to this Complaint as Exhibit A and is incorporated herein by reference.

15.    The BOP is a duly established agency of the United States responsible for providing safe and humane conditions for federal prisoners and for providing adequate medical care to prisoners who require it.

16.    All conduct by individual USMS personnel alleged herein occurred in the scope of the respective individuals' office or employment with the USMS.  All conduct by individual BOP personnel alleged herein occurred in the scope of the respective individuals' office or employment with the BOP.

## JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

17.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1346(b) because the action asserts a claim against the United States for money damages for Ms. Circle Bear's personal injury and death.  As is explained below, Ms. Circle Bear's injury—and ultimately her death—were caused by the negligent and wrongful acts and omissions of employees of the United States acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable under the law of the places where the respective acts and omissions occurred.

18.    Venue is proper in this Court under 28 U.S.C. § 1402(b) because the plaintiff resides in the District of South Dakota, the decedent resided in the District of South Dakota, and a substantial portion of the acts complained of occurred in the District of South Dakota.

19.    Ms. LeBeau, as administrator of Ms. Circle Bear's estate, is the proper party to assert this claim under the FTCA.  Ms. LeBeau properly presented all claims asserted herein to the USMS and the BOP in writing on or about March 11, 2022, which was within two years of the claim's accrual.

20.     The USMS and the BOP jointly denied Ms. LeBeau's claims on September 16, 2022.[4]  Ms. LeBeau's FTCA claims in this Court are timely under 28 U.S.C. § 2401(b).

## FACTUAL ALLEGATIONS

### I.     Ms. Circle Bear's Pregnancy and Incarceration in South Dakota

21.     On October 7, 2019, Ms. Circle Bear pleaded guilty to one count of maintaining a drug-involved premises, in violation of 21 U.S.C. §§ 856(a)(1) and (b).  On January 14, 2020, Ms. Circle Bear was sentenced to 26 months' imprisonment, to be followed by three years of supervised release.

22.     At the time of her sentencing, Ms. Circle Bear was in her sixth month of pregnancy.  Her due date was May 7, 2020.

23.     Ms. Circle Bear's pregnancy was categorized as "extreme high risk" because she had previously delivered all five of her children by Caesarian section.

24.     Following her guilty plea in October 2019, Ms. Circle Bear was taken into the custody of the USMS and held in Hughes County Jail in Pierre, South Dakota.  Beginning on February 6, 2020, she was held in Winner City Jail in Winner, South Dakota.

25.     While held in Hughes County Jail, Ms. Circle Bear had biweekly prenatal appointments at the Avera Medical Group in Pierre.  Avera Medical Group provided comprehensive prenatal and childbirth services.

26.     While held in Winner City Jail, Ms. Circle Bear had biweekly prenatal appointments at the Winner Regional Clinic.  Winner Regional Clinic is affiliated with Winner Regional Health, a regional hospital in Winner located less than one mile from the jail.

---

[4] Ms. LeBeau's administrative filing is attached to this Complaint as Exhibit B and is incorporated herein by reference.  The joint letter of the BOP and the USMS denying Ms. LeBeau's claims is attached to this Complaint as Exhibit C and is incorporated herein by reference.

27.     Ms. Circle Bear was scheduled to deliver her baby by Caesarian section at Avera St. Mary's Hospital in Pierre, where she had delivered her other children, all by Caesarian section.  Avera St. Mary's is an approximately 90-minute drive from Winner City Jail.  Ms. Circle Bear and Ms. LeBeau had planned for Ms. LeBeau to take custody of the newborn baby until Ms. Circle Bear's release.

28.     The USMS was or should have been familiar with Ms. Circle Bear's medical history, the high-risk status of her pregnancy, and her birth plans in South Dakota.

29.     Ms. Circle Bear did not have any medical issues that required treatment unavailable to her through her existing medical providers in Winner and Pierre.

## II.     The BOP's and the USMS's Response to the COVID-19 Pandemic

30.     In January 2020, the BOP established a task force to plan the agency's COVID-19 response.  The task force worked in conjunction with the World Health Organization ("WHO") and the CDC to develop COVID-19 guidance for federal prisons.  On January 31, 2020, and February 29, 2020, the BOP's medical director issued guidance documents to clinical personnel describing best practices for preventing the disease's spread.

31.     On March 11, 2020, the WHO declared that COVID-19 was a pandemic.

32.     On March 13, 2020, as part of its COVID-19 response, the BOP directed that "[a]ll inmate facility transfers will be suspended for 30 days, at which time the suspension will be reevaluated."[5]  The BOP noted that exceptions would be permitted "for forensic studies, writs, Interstate Agreements on Detainers (IAD), medical or mental health treatment, and release to

---

[5]  Fed. Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan: Agency-Wide Modified Operations* (updated Mar. 13, 2020, 3:09 PM ET), https://www.bop.gov/resources/news/20200313_covid-19.jsp.

pre-release custody," and that "[o]ther case-by-case exceptions (e.g. for judicial proceedings) may be approved by BOP Regional Counsel."[6]

33.     On March 19, 2020, the USMS issued a guidance document "strongly encourag[ing] districts to continue coordinating all aspects of detention management" with "local detention facility partners," including wardens of BOP facilities.[7]  The guidance document set forth the BOP's updated policies, including that the BOP had "[s]uspend[ed] all inmate internal movement for 30 days" with the limited exceptions outlined above.[8]

34.     On March 24, 2020, the BOP issued a press release describing the March 13 policy as "restricting inmate movement to only required and mission-essential transfers."[9]

35.     The BOP did not resume accepting "[r]outine transfers of sentenced prisoners" to its custody until June 30, 2020, at which point "the USMS was able to begin moving the backlog of prisoners awaiting transfers to a BOP facility."[10]

### III.     Ms. Circle Bear's Transfer to FMC Carswell

36.     On March 20, 2020—one week after the announcement that inmate movement was to be suspended for 30 days—the USMS transferred Ms. Circle Bear from South Dakota to Federal Medical Center, Carswell ("FMC Carswell"), a federal prison for female inmates in Fort Worth, Texas, operated by the BOP.

---

[6]  *Ibid.*

[7]  Prisoner Operations Div., U.S. Marshals Serv., COVID – 19 Detention Guidance 1 (Mar. 19, 2020).  The USMS's March 19 guidance document is attached to this Complaint as Exhibit D and is incorporated herein by reference.

[8]  *Ibid.*

[9]  Fed. Bureau of Prisons, U.S. Dep't of Just., Press Release, Bureau of Prisons Update on COVID-19, at 1 (Mar. 24, 2020), https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf.

[10]  Off. of the Inspector Gen., Dep't of Just., Review of the United States Marshals Service's Response to the COVID-19 Pandemic 11 (Feb. 2021) ("OIG Report on USMS Response to COVID-19"), https://oig.justice.gov/sites/default/files/reports/21-034.pdf.

37.    FMC Carswell is approximately 800 miles from the Winner City Jail, in which Ms. Circle Bear had been held prior to her transfer.

38.    A March 3, 2020 email from a BOP employee responsible for Ms. Circle Bear's transfer and sent to at least a dozen USMS and BOP officials indicated that Ms. Circle Bear had a "very high risk pregnancy."

39.    Ms. Circle Bear had several other preexisting medical risk factors as well, of which the USMS was also aware.

40.    In email correspondence between March 4, 2020, and March 6, 2020, a USMS employee responsible for Ms. Circle Bear's transfer raised the possibility that the transfer of Ms. Circle Bear and another pregnant inmate (who was due in April 2020) "could wait until they have the babies."  Another USMS employee responded that "[w]e do NOT want to wait until they have their babies" and that "[w]e would like to get [the other prisoner] moved ASAP."  The employee did not indicate that it was important for any reason to move Ms. Circle Bear "ASAP" or that there was any pressing need to move the two pregnant inmates simultaneously.

41.    That same email correspondence included a note that both pregnant inmates would need a "clearance letter done no more than 72 h[ou]rs before the flight."

42.    On March 18, 2020, a physician at Winner Regional Clinic, acting at the request of the USMS, provided that clearance, stating that Ms. Circle Bear was "medically stable and cleared to fly for the next 72 hours," but that she would need to be reevaluated were she to develop pregnancy-related symptoms before the flight.  That physician approval related solely to whether it was safe for Ms. Circle Bear to fly as a general matter, and had nothing to do with the propriety of removing her from South Dakota, the adequacy of the COVID-19 precautions taken during that transfer, or the risks associated with placing her in a crowded prison in Texas.

9

43. The USMS did not reassess the propriety of transferring Ms. Circle Bear and the other pregnant inmate following the WHO's declaration that COVID-19 was a global pandemic and the subsequent adoption of new COVID-19-related policies by both the USMS and the BOP.

44. On March 20, 2020, Ms. Circle Bear was transported from Winner City Jail to an airfield in Sioux Falls, South Dakota. Ms. Circle Bear was made to wait on the tarmac with no coat while waiting to board; the high temperature that day in Sioux Falls was 28º F.

45. Ms. Circle Bear was eventually loaded onto a small aircraft with at least three other prisoners and four USMS staff members. None of the passengers were tested for COVID-19 prior to boarding, and the passengers did not undertake precautions such as masking or social distancing.

46. The USMS required the BOP's approval to transfer Ms. Circle Bear to FMC Carswell.

47. The USMS would not have transferred Ms. Circle Bear to FMC Carswell without receiving express approval from the BOP shortly before the transfer.

48. For instance, a March 3, 2020 email from a BOP employee responsible for the transfer indicated that "USMS [was] to coordinate [the] move with [FMC] Carswell."

49. Ms. Circle Bear's transfer from South Dakota to Texas was not related to a forensic study, writ, or interstate agreement on detainer, and no USMS or BOP records indicate that her transfer was for such a purpose.

50. Ms. Circle Bear's transfer from South Dakota to Texas was not for the purposes of medical or mental health treatment, and no USMS or BOP records indicate that her transfer was for such a purpose. Aside from her high-risk pregnancy that was well managed by local medical resources in South Dakota, Ms. Circle Bear was not in need of any additional medical

10

attention that could not be adequately provided in South Dakota.  In fact, the USMS understood that given the late stage and high-risk status of Ms. Circle Bear's pregnancy, transferring her exposed her to additional medical risk not present had she stayed in South Dakota, even aside from the risk of contracting COVID-19.

51.    Ms. Circle Bear's transfer from South Dakota to Texas was not for the purpose of release to pre-release custody, and no USMS or BOP records indicate that her transfer was for such a purpose.

52.    Ms. Circle Bear's transfer from South Dakota to Texas was not approved by BOP regional counsel, and no USMS or BOP records indicate that her transfer was approved by BOP regional counsel.

53.    Ms. Circle Bear's transfer from South Dakota to Texas was neither required nor mission essential, and no USMS or BOP records indicate that her transfer was required or mission essential.

54.    Accordingly, Ms. Circle Bear's transfer from South Dakota to Texas was a violation of the BOP's COVID-19-related policies, and in particular, the transfer violated the BOP's explicit written policy, issued on March 13, 2020, to curtail inmate movement.

55.    Ms. Circle Bear's transfer from South Dakota to Texas was also a violation of the USMS's COVID-19-related policies, and in particular, the transfer violated the USMS's explicit written policy, issued on March 19, 2020, to accommodate the BOP's COVID-19-related policies.

56.    Though the district judge who sentenced Ms. Circle Bear in January 2020 had recommended that she be held in FMC Carswell, that recommendation was not binding on the USMS or the BOP; did not take account of the high-risk nature of Ms. Circle Bear's pregnancy;

11

was made several months earlier while Ms. Circle Bear was in her second trimester; and, most importantly, was made prior to the outbreak of COVID-19 in the United States.

57.     At the time Ms. Circle Bear was transferred to Texas, the State had approximately 175 confirmed cases of COVID-19, including some in Tarrant County, where FMC Carswell is located.  On March 13, 2020—a week before Ms. Circle Bear's transfer—Texas Governor Greg Abbott declared a state of disaster due to the rising number of confirmed COVID-19 cases in the State.

58.     At the time Ms. Circle Bear was transferred to Texas, there were no reported COVID-19 cases in Tripp County, South Dakota, where Winner City Jail is located.

59.     Ms. Circle Bear arrived at FMC Carswell on March 20, 2020.  She did not have her medical records with her, as the USMS had neglected to send them.

## IV.     The Situation at FMC Carswell

60.     FMC Carswell has a capacity to house 1,627 inmates.  When Ms. Circle Bear arrived at FMC Carswell on March 20, 2020, the prison was at over-capacity status.

61.     Detention facilities like prisons are at increased risk for COVID-19 outbreaks, given the large number of staff and detainees moving in and out, the prevalence of underlying conditions that increase the risk of COVID-19 illness, and the close proximity of detainees.

62.     By March 20, 2020, the BOP was well aware that COVID-19 posed particular risks in its prisons—in significant part because of crowding—and that FMC Carswell was over capacity.  Indeed, by that date, the BOP had already begun to receive applications from prisoners seeking compassionate release on the ground that they were in imminent danger from COVID-19 because of their underlying medical conditions and the BOP's failure to allow for adequate social distancing and sanitation measures in its prisons.

63.    On March 23, 2020, the CDC issued guidance for COVID-19 prevention in correctional and detention facilities.[11]  Among other things, the CDC recommended that prisons make efforts to clean and disinfect surfaces, allow for social distancing between inmates, provide personal protective equipment to inmates and staff, perform COVID-19 tests on individuals who are suspected to have the disease, and to take special measures in the cases of individuals at higher risk of severe disease.

64.    Despite the facts that in March 2020, the WHO declared that COVID-19 was a global pandemic, the BOP issued directives geared to prevent the spread of COVID-19 among federal prisoners, and the CDC issued guidance on distancing prisoners to mitigate the spread of COVID-19, FMC Carswell did not modify its operations in response to COVID-19 until April 2020.

65.    On March 20, 2020, when Ms. Circle Bear arrived at FMC Carswell, the prison was making no effort to relieve crowding or to socially distance inmates.  Though it may not have been possible to ensure that all inmates maintained the recommended 6-foot distance from others at all times in the prison environment, FMC Carswell staff made no effort to distance prisoners *at all*.

66.    The failure to distance inmates to the extent possible increased the risk that FMC Carswell prisoners would contract COVID-19.

67.    Though FMC Carswell would quarantine newly arriving inmates from the rest of the population, the arriving inmates would not be quarantined from each other.  Instead, they

---

[11]  Ctrs. for Disease Control & Prevention, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.bop.gov/foia/docs /CDCCorrectionalfacilityguidance3.23.pdf.

would be placed in a single, crowded unit, needlessly exposing them to each other and increasing the risk that they would contract COVID-19.

68.    FMC Carswell did not provide any form of personal protective equipment (such as masks) to its general inmate population until at least late March 2020.  Even then, inmates were given only a single paper mask per week.  Paper masks are intended to be used once and discarded.

69.    Beginning in late March 2020, newly arriving inmates in quarantine units were given one surgical mask per week.  Surgical masks are intended to be used once and discarded.

70.    FMC Carswell staff generally did not wear proper face coverings when entering cells and interacting with prisoners.  Many with masks would wear them around their chins.  A mask worn around the chin offers no protection whatsoever against the spread of COVID-19.

71.    An April 7, 2020 whistleblower letter from the correctional officers' union to Senator John Cornyn documented FMC Carswell's inappropriate response to COVID-19.  The letter stated that in the view of the union, the BOP "was providing a false perception to the American people" by announcing complete lockdowns of federal prisons even though, "particularly at FMC Carswell," no such lockdown had actually occurred.[12]

72.    The whistleblower letter explained that even though FMC Carswell had "modified [its] operation[s]" in response to the COVID-19 pandemic, "[t]here ha[d] not been any guidance given to all staff as far as processes and procedures in maintaining health and safety," and FMC

---

[12]  Letter from Regina Warren, President, FMC Carswell Local 1006, Am. Fed'n of Gov't Emps., to John Cornyn, Senior U.S. Senator of Tex., at 2–3 (Apr. 7, 2020), https://s3.documentcloud.org/documents/6879694/2020-04-07-14-16-14.pdf.

Carswell had not restricted all inmate movement as the BOP had announced its prisons would do.[13]

73.     FMC Carswell only began modifying its operations in response to COVID-19 on April 2, 2020.

74.     The whistleblower letter recounted Ms. Circle Bear's case, explaining how FMC Carswell had failed to take adequate precautions even after she was hospitalized with COVID-19.  The letter explained that seven FMC Carswell staff members (including a nurse) that had interacted with Ms. Circle Bear "continued to come to work" for a full week after she exhibited symptoms, contrary to CDC guidelines requiring self-quarantining from the moment of exposure to a symptomatic person.[14]  Even after Ms. Circle Bear tested positive for COVID-19, the nurse with whom she had interacted continued to work at the prison.

75.     The whistleblower letter faulted FMC Carswell for these events, noting that the prison's "cavalier approach led to these presumptive cases by refusing to practice social distancing as recommended by the CDC."[15]  It accused FMC Carswell of "knowingly and willingly misle[a]d[ing] the public" and "placing the staff, inmates, and community at risk to the most lethal pandemic since 1920."[16]

76.     As indicated in the whistleblower letter, by April 7, 2020, the BOP had not yet implemented adequate safety precautions at FMC Carswell.  The failure to adequately address the pandemic continued beyond that date.  Even after April 7, 2020, FMC Carswell inmates

---

[13]  *Id.* at 3.

[14]  *Ibid.*

[15]  *Id.* at 4.

[16]  *Ibid.*

reported to the media that they lacked basic sanitary products such as toilet paper, sanitary pads, and soap for bathrooms.[17]

77.     After one inmate, Mendy Forbes, reported the unsanitary conditions at FMC Carswell to members of the media, she was placed into administrative segregation, "more commonly called solitary confinement," allegedly as punishment for speaking to the press about her and other inmates' fears.[18]

78.     Many other inmates expressed that they feared retaliation from FMC Carswell staff if they shared details of the prison's inadequate COVID-19 response with the media, or if they joined a lawsuit against the prison for endangering the inmates.[19]

79.     In the summer of 2020, 510 inmates at FMC Carswell—more than one-third of the entire population at the facility—tested positive for COVID-19.  This outbreak was a result of the BOP's failure to implement basic strategies for mitigating the spread of the virus that were used nationwide in other prisons and jails.  For instance, inmates were given cloth masks that were washed just once a week, and they sometimes went weeks at a time without the opportunity to purchase sanitary items such as soap.

80.     In addition to Ms. Circle Bear, five other women died at FMC Carswell between the onset of the pandemic and August 2020, including one who contracted COVID-19 after she was transferred to a cell with another inmate who had already tested positive.

---

[17]  *See* Christopher Connelly, *'We're All Really Scared': Life in Federal Lockup Remains Uncertain During COVID-19 Outbreak*, KERA News (updated Apr. 13, 2020, 8:05 AM CDT), https://www.keranews.org/texas-news/2020-04-13/were-all-really-scared-life-in-federal-lockup-remains-uncertain-during-covid-19-outbreak.

[18]  *Ibid.*

[19]  *See* Kaley Johnson, *Women at 'House of Horror' Fort Worth Prison Say They Face COVID, Rotten Food, Abuse*, Fort Worth Star-Telegram (updated Sept. 3, 2020, 9:56 AM), https://www.star-telegram.com/news/coronavirus/article245306760.html.

## V.    Ms. Circle Bear Quickly Contracts COVID-19

81.    When Ms. Circle Bear arrived at FMC Carswell on March 20, 2020, she was placed in an approximately 6-foot-by-8-foot cell with the three other women with whom she had been transported.  The four women shared a single toilet and a single sink.  They slept on two sets of bunk beds.

82.    Ms. Circle Bear and her three cellmates were not given any hand sanitizer.  Other than a shared bar of soap, the women were not given any sanitation products at all.

83.    Ms. Circle Bear remained in this cell for eight days.

84.    As noted above, on March 23, 2020, the CDC issued guidance on maintaining social distancing between inmates and on recommended practices for inmate sleep, such as distancing beds to the maximum extent possible and having inmates sleep head-to-toe.  After this guidance was issued, staff at FMC Carswell made no adjustment to Ms. Circle Bear's living arrangements.

85.    The CDC's March 23, 2020 guidance also set forth proper protocols for maintaining cleanliness in correctional and detention facilities, including that frequently touched surfaces (*e.g.*, toilets, sink handles) should be cleaned and disinfected several times daily.  After this guidance was issued, staff at FMC Carswell made no adjustment to Ms. Circle Bear's living arrangements.

86.    By March 26, 2020, Ms. Circle Bear had developed a dry cough, shortness of breath, and muscle aches.  Though Ms. Circle Bear reported these symptoms, the symptoms were consistent with COVID-19, and Ms. Circle Bear was in the third trimester of a high-risk pregnancy, she was not seen by a doctor until the afternoon of March 28, 2020.  That medical

17

visit occurred because Ms. Circle Bear was having contractions, not because she was symptomatic for COVID-19.

87.     At approximately 2:40 p.m. on March 28, 2020, Ms. Circle Bear was seen by Dr. Ryan Whitmer, an FMC Carswell physician.  She informed him that she felt feverish and had chills, and Dr. Whitmer noted that Ms. Circle Bear appeared ill.  Still, Ms. Circle Bear was not assessed for possible infection with COVID-19.  Though it is well understood that fetal health is one of the most reliable indicators of maternal health—especially when the mother is having contractions—Dr. Whitmer did not check on the health of Ms. Circle Bear's fetus.

88.     Ms. Circle Bear saw Dr. Whitmer again approximately three hours later.  At this visit, Ms. Circle Bear registered a fever of 100.3º F.  She was sent to John Peter Smith Hospital ("JPS") in Fort Worth.  A contemporaneous note in Ms. Circle Bear's BOP medical records indicates that she was sent to JPS "[d]ue to lack of testing here [*i.e.*, at FMC Carswell] on the weekend."

89.     Ms. Circle Bear's symptoms reportedly subsided after arriving at JPS, and she was returned to FMC Carswell in the evening of March 28, 2020.  A contemporaneous note in Ms. Circle Bear's BOP medical records indicates that Ms. Circle Bear reported on her return to FMC Carswell that JPS "did no workup."

90.     At approximately 11:30 p.m. on March 28, 2020—shortly after she returned from JPS—Ms. Circle Bear registered a fever of 100.9º F.  She was seen by Dr. Jason Miller, an FMC Carswell physician.  Dr. Miller wrote a note in Ms. Circle Bear's file that she should be under "close supervision . . . for development of any new symptoms," that he had discussed the necessity of supervision with nurses, and that Ms. Circle Bear should be sent back to the hospital

18

"if temp[erature] continues to rise or if she develops cough, body aches or shortness of breath." Dr. Miller did not check on the health of Ms. Circle Bear's fetus.

91.    FMC Carswell staff failed to heed Dr. Miller's directive that Ms. Circle Bear should be monitored closely and returned to the hospital if she developed new or worsened symptoms.

92.    At approximately 6:30 a.m. on March 29, 2020, an FMC Carswell nurse observed Ms. Circle Bear wrapped in two blankets. Ms. Circle Bear reported to the nurse that she had developed a cough. No action was taken by the nurse or other FMC Carswell staff: Ms. Circle Bear was not returned to the hospital, and she did not see a doctor until the following afternoon.

93.    At approximately 3:45 p.m. on March 30, 2020—more than 33 hours after a nurse observed her cough—Ms. Circle Bear had a visit with Dr. Janet Shackelford, an FMC Carswell physician. Dr. Shackelford recorded that Ms. Circle Bear's coughing was "severe w[ith] production [of] green/brown mucus" and that she had a fever of 100.5º F. Dr. Shackelford did not check on the health of Ms. Circle Bear's fetus, and Ms. Circle Bear was not returned to the hospital at that time.

94.    At approximately 6:35 p.m. on March 30, 2020, Ms. Circle Bear reported to a nurse that she was feeling "hot" and "feverish." The nurse recorded Ms. Circle Bear's temperature at 102.0º F and noted that she had a dry cough. Ms. Circle Bear also reported that she had been feeling nauseous and vomiting over the last day. Ms. Circle Bear was then seen by Dr. Matthew Rios. Dr. Rios did not check on the health of Ms. Circle Bear's fetus, and Ms. Circle Bear was not returned to the hospital at that time.

95.    At approximately 10:00 a.m. on March 31, 2020, Dr. Shackelford saw Ms. Circle Bear again and again noted that her cough was severe and producing green or brown mucus. Dr.

19

Shackelford did not check on the health of Ms. Circle Bear's fetus, and Ms. Circle Bear was not returned to the hospital at that time.

96.    At approximately 12:50 p.m. on March 31, 2020, Dr. Shackelford recorded that Ms. Circle Bear had a "persistent cough."  Later that afternoon, Ms. Circle Bear was finally sent back to the emergency room at JPS.

97.    In the case of individuals like Ms. Circle Bear who are at high risk of severe COVID-19 illness, early diagnosis and treatment of the disease is critical in preventing hospitalization, serious illness, and death.  The CDC advises that if an individual "ha[s] COVID-19 and [is] more likely to get very sick, treatments are available that can reduce [her] chances of hospitalization and death," and that such "[t]reatment must be started within days after [she] first develop[s] symptoms to be effective."[20]

## VI.    Ms. Circle Bear Is Hospitalized, Delivers Her Baby, and Dies

98.    When Ms. Circle Bear arrived at JPS for the second time in the afternoon of March 31, 2020, she was 34 weeks pregnant.

99.    Ms. Circle Bear's condition continued to deteriorate after she arrived at JPS. Later on March 31, 2020, she was brought to the intensive care unit, intubated, and placed on a ventilator.

100.    On April 1, 2020, medical staff at JPS decided to perform an emergency Caesarian section on Ms. Circle Bear due to Ms. Circle Bear's low oxygen levels and her fetus's low heart rate.  At approximately 11:30 p.m., Ms. Circle Bear gave birth to a baby girl.  Her baby weighed approximately 5 pounds, 7 ounces, and was placed in the neonatal intensive care unit

---

[20] *COVID-19 Treatments and Medications*, Ctrs. for Disease Control & Prevention (updated Feb. 10, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html.

due to respiratory distress.  Ms. Circle Bear was in an induced coma and intubated during the birth.

101.    On April 2, 2020, an internal BOP memorandum indicated that Ms. Circle Bear's prognosis was poor enough that there was a need to contact her next of kin.[21]

102.    On April 4, 2020, the results of a test taken on March 31 came back and showed that Ms. Circle Bear was positive for COVID-19.

103.    On April 19, 2020, Ms. Circle Bear's two-week-old baby was discharged from the hospital.  Ms. LeBeau drove over 1,000 miles from South Dakota to Fort Worth to pick the baby up and return her to South Dakota.  Due to COVID-19 restrictions, Ms. LeBeau was unable to see Ms. Circle Bear.

104.    Ms. Circle Bear remained intubated for the rest of her life.  On April 28, 2020—approximately four weeks after giving birth—she suffered cardiac arrest and died.

## VII.    Other Events Surrounding Ms. Circle Bear's Hospitalization and Death

105.    There was significant media coverage of Ms. Circle Bear's transfer, illness, and death.  That coverage included local, national, and international reports that were highly critical of Ms. Circle's Bear treatment by the USMS and the BOP.  For instance, a South Dakota news story offered commentary expressing disbelief that "in the midst of a global pandemic, our government moved a 30-year-old, COVID-vulnerable pregnant woman not to a hospital or to her home, but to a federal prison."[22]  A *New York Times* opinion article emphasized that "[t]he

---

[21] Memorandum from Redacted Author to Michael Carr, Warden, Fed. Med. Ctr. Fort Worth Tex. 1 (Apr. 2, 2020).  This memorandum is attached to this Complaint as Exhibit E and is incorporated herein by reference.

[22] Danielle Ferguson, *South Dakota Woman Who Gave Birth While on Ventilator Dies of COVID-19 After Federal Prison Transfer*, Argus Leader (updated Apr. 29, 2020, 3:46 PM CT), https://www.argusleader.com /story/news/2020/04/29/south-dakota-woman-dies-covid-19-after-giving-birth-ventilator/3046584001.

government could have predicted and prevented Andrea Circle Bear's death."[23]  International news sources criticized the U.S. Government's treatment of Ms. Circle Bar as well.[24]

106.    Following Ms. Circle Bear's death, the BOP reviewed its policies to prevent a similar situation.  It ultimately transferred the majority of pregnant inmates out of prisons and into either home confinement or alternative facilities.

107.    On April 14, 2020—while Ms. Circle Bear was on a ventilator and it had become apparent that her life was in jeopardy—Dr. Shackelford modified the notes from her March 30 and March 31 examinations of Ms. Circle Bear.  In making the revisions, Dr. Shackelford claimed that she had inadvertently "clicked [the] wrong entry" when she recorded that Ms. Circle Bear's cough was "severe or productive."  Dr. Shackelford revised the March 30 entry to describe Ms. Circle Bear as having only a "mild dry cough," and she revised the March 31 entry to describe Ms. Circle Bear as having a "mild cough" in the morning and a "stronger more moderate persistent cough" in the afternoon that was "[n]ever productive or severe."

108.    Dr. Shackelford did not explain what caused her to purportedly make an identical recordkeeping error on separate occasions on separate days.  A fair interpretation is that Dr. Shackelford's change was an effort to retroactively justify the FMC Carswell medical staff's failure to take appropriate action when Ms. Circle Bear's health was rapidly deteriorating on March 30 and March 31.

---

[23]  Holly Harris, Opinion, *Blame the Justice Department for Andrea Circle Bear's Death*, N.Y. Times (May 3, 2020), https://www.nytimes.com/2020/05/03/opinion/andrea-circle-bear-coronavirus-prison.html.

[24]  *See, e.g.*, Lois Beckett, *US Inmate with Coronavirus Dies Weeks After Giving Birth on a Ventilator*, The Guardian (Apr. 29, 2020, 8:38 PM EDT), https://www.theguardian.com/world/2020/apr/29/coronavirus-andrea-circle-bear-federal-prison-death; *Inmate Who Gave Birth on Ventilator Dies of Covid-19*, BBC News (Apr. 29, 2020), https://www.bbc.com/news/world-us-canada-52465728; Joseph Stepansky, *Outrage After US Inmate with Coronavirus Dies After Giving Birth*, Al Jazeera (Apr. 30, 2020), https://www.aljazeera.com/news/2020/4/30/outrage-after-us-inmate-with-coronavirus-dies-after-giving-birth.

109.    In February 2021, a Department of Justice Office of the Inspector General report criticized the USMS's COVID-19-related policies, including its "practice of transporting prisoners without first testing to confirm that they are COVID-19 free."[25]  The report also criticized the USMS's failure to take adequate precautions to prevent the spread of COVID-19 while prisoners were in transit.[26]

## COUNT ONE
**Negligence/Wrongful Death in Violation of the Federal Tort Claims Act,
28 U.S.C. §§ 1346(b) and 2674**

110.    The foregoing paragraphs of this Complaint are repeated and realleged as if fully set forth herein.

111.    The United States, acting through the USMS and the BOP, owed Ms. Circle Bear a duty of care, which included not subjecting her to an unreasonable risk of foreseeable illness. In light of Ms. Circle Bear's high-risk pregnancy, her other medical risk factors, and the pandemic, that duty required the United States to act with particular caution.

112.    The United States breached its duty by transferring Ms. Circle Bear out of a stable medical situation, in which her pregnancy was well managed and she was relatively safe from COVID-19, and placing her into an environment that made her far more likely to contract COVID-19.  That decision foreseeably and significantly increased the risk that Ms. Circle Bear would contract COVID-19.

113.    When the United States transferred Ms. Circle Bear to FMC Carswell, there was no medical or administrative need or advantage to doing so.  To the contrary, Ms. Circle Bear was in the final stages of a high-risk pregnancy, and she was being monitored and treated by

---

[25]  OIG Report on USMS Response to COVID-19, *supra* note 10, at 1.

[26]  *See id.* at 11–13.

medical professionals in South Dakota familiar with her history and condition. The South Dakota hospital in which she was to give birth was a short distance from relatives who were to take custody of the newborn child, and there had been zero confirmed COVID-19 cases in the entire county in which she was held. By contrast, Fort Worth, Texas, is in a heavily populated region which had already seen a large number of COVID-19 cases and in a State where the Governor had declared a state of disaster. Further, it was well understood at the time that a crowded prison like FMC Carswell, without adequate protections in place, was an extremely dangerous place for *any* person to be.

114. Moreover, the transfer of Ms. Circle Bear was contrary to an express policy not to move inmates *even locally* between institutions unless absolutely necessary. Not only did the Government nonetheless move Ms. Circle Bear from South Dakota to Texas, it did so without undertaking any COVID-19 precautions during that lengthy journey.

115. The United States' decision to transfer Ms. Circle Bear from South Dakota to Texas, along with the manner in which it transferred her, proximately caused her to contract COVID-19, to deliver her baby by emergency Caesarian section while on a ventilator, and to die. Had she remained in South Dakota, there is almost no chance she would have developed COVID-19 prior to giving birth. Even had she been transferred to FMC Carswell after giving birth and later contracted COVID-19 there, her chance of survival would have been far greater given that pregnancy increases the risk of severe COVID-19 illness.

## COUNT TWO
**Negligence/Wrongful Death in Violation of the Federal Tort Claims Act,**
**28 U.S.C. §§ 1346(b) and 2674**

116. The foregoing paragraphs of this Complaint are repeated and realleged as if fully set forth herein.

24

117. The United States, acting through the USMS and the BOP, owed Ms. Circle Bear a duty to ensure her safety. That duty encompassed taking adequate precautions to protect her from contracting COVID-19.

118. The United States breached that duty because, for the most part, it utterly ignored it. Ms. Circle Bear's unnecessary and recklessly prescribed journey from South Dakota to Texas involved a flight on a small aircraft with at least seven other passengers, but the Government did not undertake *any* COVID-19 precautions on that flight. Nor did the Government undertake even minimally acceptable efforts to keep Ms. Circle Bear safe at FMC Carswell: she was "quarantined" in a small cell with three other women, she was unable to socially distance, and she was provided with next to no supplies for maintaining cleanliness or protecting her from COVID-19 exposure.

119. The United States' conduct with respect to conditions at FMC Carswell blatantly violated 18 U.S.C. § 4042(a)(2), which requires the BOP to "provide suitable quarters and provide for the safekeeping, care, and subsistence" of federal prisoners. The United States' conduct similarly violated 18 U.S.C. § 4042(a)(3), which requires the BOP to "provide for the protection" of federal prisoners.

120. The United States' conduct with respect to conditions at FMC Carswell was blatantly antithetical to the detailed guidance set forth by the CDC, another U.S. agency.

121. The United States' reckless failure to use basic safety precautions to prevent the spread of COVID-19 during Ms. Circle Bear's journey to FMC Carswell and after her arrival at the prison proximately caused her to contract COVID-19, to deliver her baby by emergency Caesarian section while on a ventilator, and to die.

25

## COUNT THREE

### Negligence/Wrongful Death in Violation of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674

122. The foregoing paragraphs of this Complaint are repeated and realleged as if fully set forth herein.

123. The United States, acting through the BOP, owed Ms. Circle Bear a duty to provide adequate medical care.

124. The United States breached its duty to provide adequate medical care to Ms. Circle Bear when its employees at FMC Carswell failed to timely recognize and treat her obvious COVID-19 symptoms. Medical staff at FMC Carswell failed to have a doctor examine Ms. Circle Bear for two full days after exhibiting known COVID-19 symptoms; failed to adequately monitor the health of Ms. Circle Bear's fetus despite the high-risk nature of the pregnancy and Ms. Circle Bear's report of early contractions; and delayed returning Ms. Circle Bear to the hospital despite her worsening symptoms.

125. Had FMC Carswell medical staff provided adequate medical treatment for Ms. Circle Bear's COVID-19, put in place adequate COVID-19 procedures, and/or given adequate attention to the deteriorating status of her pregnancy, Ms. Circle Bear would not have ultimately died from COVID-19. Particularly with high-risk patients like Ms. Circle Bear, beginning treatment as early as possible is a critical step to preventing severe illness and death. Ms. Circle Bear was not tested for COVID-19 until her health had already rapidly declined, and she was not officially diagnosed with COVID-19 until she was already on a ventilator.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Clara LeBeau requests that this Court enter judgment in her favor on all Counts of this Complaint and grant her the following relief:

A.      An award of compensatory damages to account for Ms. Circle Bear's illness and injuries;

B.      An award of compensatory damages to account for Ms. Circle Bear's pain and suffering;

C.      An award of compensatory damages to account for Ms. Circle Bear's death;

D.      An award of compensatory damages to account for Ms. Circle Bear's lifetime lost earnings;

E.      An award of compensatory damages to account for the emotional injury inflicted on Ms. Circle Bear's six surviving children and on Ms. LeBeau;

F.      An award of compensatory damages to account for the loss of companionship suffered by Ms. Circle Bear's six surviving children and by Ms. LeBeau as a result of Ms. Circle Bear's death;

G.      An award of compensatory damages to account for the costs incurred by Ms. Circle Bear's estate in relation to her funeral and burial; and

H.      Such other relief that this Court deems just and proper under the circumstances.

Dated:  March 15, 2023                                         Respectfully submitted,

                                                              */s/ Raleigh Hansman*
                                                              Raleigh Hansman
                                                              S.D. Bar No. 4327
                                                              MEIERHENRY SARGENT LLP
                                                              315 S. Phillips Ave.
                                                              Sioux Falls, SD 57104
                                                              (605) 336-3075
                                                              raleigh@meierhenrylaw.com

27

Ross B. Bricker**
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350
rbricker@jenner.com

Jonathan J. Marshall**
JENNER & BLOCK LLP
1099 New York Ave., N.W.,
   Suite 900
Washington, DC 20001
(202) 639-6000
jmarshall@jenner.com

Katherine Rosenfeld**
Max Selver**
EMERY CELLI BRINCKERHOFF
   ABADY WARD & MAAZEL LLP
600 5th Avenue, 10th Floor
New York, NY 10020
(212) 673-5000
krosenfeld@ecbawm.com
mselver@ecbawm.com

** *pro hac vice* application
forthcoming

28

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Clara LeBeau, as Administrator of the Estate of Andrea Circle Bear, a/k/a "Andrea High Bear," deceased

**(b)** County of Residence of First Listed Plaintiff    Dewey County, S.D.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

(See attachment.)

## DEFENDANTS

United States of America

County of Residence of First Listed Defendant    n/a
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Alison J. Ramsdell, U.S. Attorney, District of South Dakota, P.O. Box 2638, Sioux Falls, SD 57101

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☒ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 380 Other Personal Property Damage | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | |
| | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding  ☐ 2  Removed from State Court  ☐ 3  Remanded from Appellate Court  ☐ 4  Reinstated or Reopened  ☐ 5  Transferred from Another District *(specify)*  ☐ 6  Multidistrict Litigation - Transfer  ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Federal Tort Claims Act, 28 U.S.C. 1346(b), 2674

Brief description of cause:
Negligence by United States resulting in injury and death

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   to be determined

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| | |
|---|---|
| DATE | SIGNATURE OF ATTORNEY OF RECORD |
| 3/15/2023 | /s/ Raleigh Hansman |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## CIVIL COVER SHEET ADDENDUM

**I.**

**(c) Attorneys**

Raleigh Hansman (S.D. Bar No. 4327)
Meierhenry Sargent LLP
315 S. Phillips Ave.
Sioux Falls, SD 57104
(605) 336-3075

Ross B. Bricker (*pro hac vice* application forthcoming)
Jenner & Block LLP
353 N. Clark St.
Chicago, IL 60654
(312) 222-9350

Jonathan J. Marshall (*pro hac vice* application forthcoming)
Jenner & Block LLP
1099 New York Ave., N.W., Suite 900
Washington, DC 20001
(202) 639-6000

Katherine Rosenfeld (*pro hac vice* application forthcoming)
Max Selver (*pro hac vice* application forthcoming)
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 5th Avenue, 10th Floor
New York, NY 10020
(212) 673-5000